## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## EASTERN DIVISION

| | | |
|---|---|---|
| BELITA A. BROOKS FAKI, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Case No.: 1:16-CV-0153-VEH** |
| | ) | |
| THE BOARD OF TRUSTEES OF | ) | |
| THE UNIVERSITY OF ALABAMA, | ) | |
| | ) | |
| **Defendant.** | ) | |

---

## <u>MEMORANDUM OPINION</u>

## I.    INTRODUCTION

### A.    Summary of Ms. Faki's Claims

On January 27, 2017, Plaintiff Belita A. Brooks Faki ("Ms. Faki"), who is representing herself, initiated this job discrimination lawsuit against the Board of Trustees of the University of Alabama (the "Board"). (Doc. 1); (*see also* Doc. 23 (substituting in correct name of Defendant)). Ms. Faki filed an amended complaint (doc. 10) on April 18, 2016. As amended, her lawsuit clearly asserts a cause of action for disability discrimination arising under the Rehabilitation Act of 1973. (*See* Doc. 10 at 5 ("CAUSE OF ACTION – Disability Discrimination")). Ms. Faki also alleges that the Board retaliated against her for complaining about disability discrimination.

(*Id.* at 5 ¶ 17).

### B.    Summary of Pending Motions

Pending before the Court is the Board's Motion for Summary Judgment (doc. 46) (the "Motion") filed on June 13, 2017. The Board filed its brief (doc. 47) and evidentiary submission (Doc. 48) on this same date. The Board seeks a dismissal of Ms. Faki's case and additionally asks the Court to tax costs against her. (*Id.* at 25).[1]

On June 1, 2017, the Court entered its customary *pro se* summary judgment scheduling order (doc. 49) that gave Ms. Faki special notice of her right to respond to the Board's Motion with affidavits or other opposing evidence and warned her about the consequences of not adequately responding to it. Nonetheless, Ms. Faki has not responded to the Board's Motion.

On August 7, 2017, the Board filed a Supplemental Motion for Summary Judgment (doc. 51) (the "Supplemental Motion"). The Board pointed out that Ms. Faki had failed to oppose summary judgment by her deadline of July 17, 2017. (*Id.* at 2 ¶ 5). As the Board's Supplemental Motion is redundant of the Motion–in terms of the relief sought by the Board–the Supplemental Motion is due to be termed as moot. Further, for the reasons explained below, the Board's Motion is due to be granted with the exception of taxing costs against Ms. Faki.

---

[1]  All page references to Doc. 47 correspond with the Court's CM/ECF numbering system.

## II.   FACTUAL BACKGROUND[2]

Ms. Faki was a non-tenured instructor at the University of Alabama at Birmingham ("UAB") in the College of Arts and Sciences ("CAS"), Department of Foreign Languages and Literature ("DFLL"). AF No. 1.[3] Ms. Faki began working for UAB in 1999. AF No. 2. Ms. Faki was a language instructor for Spanish and Italian courses.

Ms. Faki has Sjogren's syndrome and mixed connective tissue disease, both of which are autoimmune diseases. AF No. 4. Ms. Faki alleges she is disabled because of Sjogren's syndrome and mixed connective tissue disease. AF No. 5. Ms. Faki's

---

[2] Keeping in mind that when deciding a motion for summary judgment the Court must view the evidence and all factual inferences in the light most favorable to the party opposing the motion, the Court provides the following statement of facts. *See Optimum Techs., Inc. v. Henkel Consumer Adhesives, Inc.*, 496 F.3d 1231, 1241 (11th Cir. 2007) (observing that, in connection with summary judgment, a court must review all facts and inferences in a light most favorable to the non-moving party). This statement does not represent actual findings of fact. *See In re Celotex Corp.*, 487 F.3d 1320, 1328 (11th Cir. 2007). Instead, the Court has provided this statement simply to place the Court's legal analysis in the context of this particular case or controversy.

[3] Under Appendix II of the Court's Uniform Initial Order (doc. 19) entered on September 17, 2016, "[a]ll statements of fact must be supported by specific reference to evidentiary submissions." (*Id.* at 16). The designation "AF" stands for admitted fact and indicates a fact offered by the Board that that it has adequately supported through citations to underlying evidence as Appendix II mandates. For Ms. Faki, more specifically, this means that even though she failed to address the factual section of the Board's brief in support of its Motion, the Court has independently reviewed the proof (*i.e.*, the Board's evidentiary materials contained in Doc. 48) offered by the Board to establish that proposed fact before accepting it as a fact admitted by Ms. Faki. The Court's numbering of admitted facts (*e.g.*, AF No. 1) corresponds to the numbering of the Board's factual background as set forth in Doc. 47. A number following a decimal point corresponds to the particular sentence within the numbered statement of facts. For example, (AF No. 9.2) would indicate the second sentence of paragraph 9 of the Board's Undisputed Relevant Material Facts is the subject of the Court's citation to the record.

amended complaint alleges disability discrimination in violation of the Rehabilitation Act (29 U.S.C. § 794) and is based on her claim that her employment with UAB was terminated because of her disability. AF No. 6.

On September 16, 2015, Ms. Faki notified the CAS Dean, Robert Palazzo ("Dean Palazzo"), Department Chair Julian Arribas, Ph.D. ("Dr. Arribas"), and Professor Catherine Danielou ("Dr. Danielou") that she had a disability, wanted certain accommodations, and inquired who she should talk to about obtaining accommodations. AF No. 7. Ms. Faki did not tell anyone at UAB that she was disabled until her notice to Dean Palazzo, Dr. Arribas, and Professor Danielou. AF No. 8.

UAB has a formal program to assist employees with disabilities. AF No. 9.1. This is called the AWARE (Always Working to Advocate, Retain & Employ) Program. AF No. 9.2. The AWARE program provides disability-management services when an employee's job is affected by a physical, mental, or emotional impairment. AF No. 9.3.

UAB Human Resources ("HR") coordinates employee requests for reasonable workplace accommodations. AF No. 10.1. It is the process and procedure of UAB HR that employees make accommodation requests by completing an Employee Accommodation Request Form and returning it to the AWARE Disability

Management Program Coordinator. AF No. 10.2.

It is an employee's responsibility to request an accommodation. AF No. 11.1. The AWARE Program may require written documentation of an employee's limitations or restrictions from an appropriate health care provider to support a reasonable request for accommodation. AF No. 11.2. After Ms. Faki's September 16, 2015, email disclosing a disability and requesting accommodations, Ms. Faki was informed she needed to complete an Employee Accommodation Request Form, was given that form, and was instructed to contact Sherri Moultrie, Disability Management Program Coordinator of UAB's AWARE program, for additional help with her disability and request for accommodations. AF No. 12.

Ms. Moultrie first learned on September 17, 2015, that Ms. Faki had a disability and might require accommodations when she received an email from the Manager of HR Operations for the CAS. AF No. 13. Before September 17, 2015, neither Ms. Moultrie nor UAB HR/AWARE had any record of Ms. Faki's report of a disability or a request for any accommodations. AF No. 14. Ms. Moultrie communicated with Ms. Faki several times regarding her request for accommodations.

Ms. Faki never supplied UAB's AWARE program with a fully complete Employee Accommodation Request Form nor physician documentation supporting

her disability or need for accommodations. AF No. 16. If Ms. Faki had submitted a complete Employee Accommodation Request Form and the necessary information from her physician, UAB would have accepted this information and continued to facilitate the interactive process to determine and implement necessary reasonable accommodations for her. AF No. 17.

As a non-tenured instructor, Ms. Faki's performance was evaluated based on two components – (1) teaching; and (2) service. AF No. 18.1. Teaching was weighted at 80% and service weighted at 20%. AF No. 18.2. With this weighting, a faculty member cannot achieve a satisfactory overall performance evaluation without a satisfactory teaching evaluation. AF No. 18.3. Ms. Faki's teaching performance was deficient, and these deficiencies were frequently noted in her annual performance appraisals by faculty as well as by students in student course evaluations. AF No. 19.

One method that UAB uses to evaluate faculty is the IDEA Evaluation. AF No. 20.1. At the conclusion of each semester, students use an anonymous IDEA Evaluation to rate faculty members' performance. AF No. 20.2. IDEA Evaluations across multiple years are considered when there is concern about faculty teaching performance. AF No. 20.3. As early as Fall 2011, Ms. Faki's IDEA Evaluations showed she more often than not performed below her DFLL peers in the CAS at UAB. AF No. 21.

The IDEA Evaluations also revealed student complaints about her poor teaching performance that included being unprepared, disorganized, indecisive, hard to contact outside of class, not encouraging, disrespectful to students, a poor communicator, and overall simply not a good teacher of foreign language. AF No. 22. A common theme with Ms. Faki was student complaints about her bad attitude, failure to adequately teach material, and students' belief that they were not learning from her instruction. AF No. 23. Dr. Arribas and Dean Palazzo agreed that Ms. Faki's consistently poor teaching performance was a reason to not renew her appointment as an instructor in the DFLL. AF No. 24.

Another reason Dr. Arribas did not renew Ms. Faki's appointment as an instructor in the DFLL was the necessary reduction in Spanish courses. AF No. 26. Enrollment in Spanish classes, specifically the Spanish courses that Ms. Faki taught, had decreased. AF No. 27. Dr. Arribas determined that to ensure the academic and financial success of the DFLL program as well as to meet programmatic needs with course offerings, the DFLL needed to decrease the number of Spanish classes offered. AF No. 27.

Dr. Arribas provided a letter to Ms. Faki dated December 28, 2015, which she received, outlining the changed Departmental needs, financial situation of the DFLL, and Ms. Faki's poor performance as reasons her appointment as an instructor would

not be renewed and providing Ms. Faki with twelve months' notice that her employment would end December 28, 2016. AF No. 28.

Ms. Faki filed a Charge of Discrimination with the EEOC (Charge No. 420-2016-00253) on October 29, 2015, alleging discrimination based on a disability. AF No. 29. The EEOC did not find evidence of a violation of the Rehabilitation Act and issued a Dismissal and Notice of Rights letter dated November 2, 2015. AF No. 30. On April 19, 2016, Ms. Faki filed an amended complaint alleging discrimination because of a disability in violation of the Rehabilitation Act. AF No. 31.

## III.   STANDARDS

### A.   Summary Judgment Generally

Under Federal Rule of Civil Procedure 56, summary judgment is proper if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 2265 (1986) ("[S]ummary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.") (internal quotation marks omitted). The party requesting summary judgment always bears the initial responsibility of informing the Court of the basis

for its motion and identifying those portions of the pleadings or filings that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323, 106 S. Ct. at 2553. Once the moving party has met its burden, Rule 56(c) requires the non-moving party to go beyond the pleadings in answering the movant.[4] *Id.* at 324, 106 S. Ct. at 2553. By its own affidavits – or by the depositions, answers to interrogatories, and admissions on file – it must designate specific facts showing that there is a genuine issue for trial. *Id.*

The underlying substantive law identifies which facts are material and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d. 202 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000). Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510. A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* If the evidence presented by the non-movant to rebut the moving party's evidence is merely colorable, or is not significantly probative,

---

[4] When *Celotex* was decided FED. R. CIV. P. 56(e) encompassed this express requirement, but now this concept is covered by the language provided for under FED. R. CIV. P. 56(c).

summary judgment may still be granted. *Id.* at 249, 106 S. Ct. at 2511.

How the movant may satisfy its initial evidentiary burden depends on whether that party bears the burden of proof on the given legal issues at trial. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). If the movant bears the burden of proof on the given issue or issues at trial, then it can only meet its burden on summary judgment by presenting *affirmative* evidence showing the absence of a genuine issue of material fact – that is, facts that would entitle it to a directed verdict if not controverted at trial. *Id.* (citing *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1438 (11th Cir. 1991)). Once the moving party makes such an affirmative showing, the burden shifts to the non-moving party to produce "significant, probative *evidence* demonstrating the existence of a triable issue of fact." *Id.* (emphasis added).

For issues on which the movant does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways. *Id.* at 1115-16. First, the movant may simply show that there is an absence of evidence to support the non-movant's case on the particular issue at hand. *Id.* at 1116. In such an instance, the non-movant must rebut by either (1) showing that the record in fact contains supporting evidence sufficient to withstand a directed verdict motion, or (2) proffering evidence sufficient to withstand a directed verdict motion at trial based on

the alleged evidentiary deficiency. *Id.* at 1116-17. When responding, the non-movant

may no longer rest on mere allegations; instead, it must set forth evidence of specific

facts. *Lewis v. Casey*, 518 U.S. 343, 358, 116 S. Ct. 2174, 2183, 135 L. Ed. 2d 606

(1996). The second method a movant in this position may use to discharge its burden

is to provide affirmative *evidence* demonstrating that the non-moving party will be

unable to prove its case at trial. *Fitzpatrick*, 2 F.3d at 1116. When this occurs, the

non-movant must rebut by offering *evidence* sufficient to withstand a directed verdict

at trial on the material fact sought to be negated. *Id.*

### B. Disability Discrimination Under the Rehabilitation Act

The Rehabilitation Act provides in pertinent part:

> No otherwise qualified individual with a disability in the United States,
> as defined in section 705(20) of this title, shall, <u>solely by reason of her
> or his disability</u>, be excluded from the participation in, be denied the
> benefits of, or be subjected to discrimination under any program or
> activity receiving Federal financial assistance . . . ."

29 U.S.C. § 794(a) (emphasis added).

As a general matter, the Eleventh Circuit evaluates § 794(a) disability claims

using the same standards as those governing the Americans With Disabilities Act (the

"ADA"). *See Cash v. Smith*, 231 F.3d 1301, 1305 (11th Cir. 2000) ("Discrimination

claims under the Rehabilitation Act are governed by the same standards used in ADA

cases[.]"); *see also* 29 U.S.C. § 794(d) ("The standards used to determine whether this

section has been violated in a complaint alleging employment discrimination under this section shall be the standards applied under . . . the Americans with Disabilities Act of 1990 . . . .").

Consequently, a claim of intentional disability discrimination follows the same basic framework whether brought under the Rehabilitation Act of the ADA. For circumstantial (as opposed to direct)[5] evidence cases this means "an individual must show that (1) he has a disability; (2) he is otherwise qualified for the position; and (3) he was subjected to unlawful discrimination as the result of his disability." *Sutton v. Lader*, 185 F.3d 1203, 1207 (11th Cir. 1999). Further, "[c]ases decided under the Rehabilitation Act are precedent for cases under the ADA, and vice-versa." *Cash*, 231 F.3d at 1305 n.2.

A notable exception to the similarities shared between the Rehabilitation Act and the ADA concerns causation. More specifically, the causation standard for disability discrimination claims arising under the Rehabilitation Act is more demanding than its counterpart under the ADA. As the Eleventh Circuit articulated

---

[5] As the Eleventh Circuit has explained, "only the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of [disability], . . . constitute direct evidence of discrimination." *Carter v. City of Miami*, 870 F.2d 578, 582 (11th Cir. 1989) (citing *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 610-11 (11th Cir. 1987)). A liberal reading of Ms. Faki's amended complaint in no way suggests that she has properly presented a direct evidence case of disability discrimination. (Doc. 10). Therefore, Ms. Faki relies upon the circumstantial evidence model to support her disability discrimination claim.

this sole-cause liability standard in *Ellis v. England*, 432 F.3d 1321 (11th Cir. 2005):

> It is not enough for a plaintiff to demonstrate that an adverse employment action was based partly on his disability. *See McNely v. Ocala Star–Banner Corp.*, 99 F.3d 1068, 1074 (11th Cir.1996). Rather, under the Rehabilitation Act, <u>a plaintiff must prove that he suffered an adverse employment action "solely by reason of" his handicap</u>. 29 U.S.C. § 794(a).

*Ellis*, 432 F.3d at 1326 (emphasis added).

### C. *Pro Se* Filings

"*Pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998) (citing *Fernandez v. United States*, 941 F.2d 1488, 1491 (11th Cir. 1991)). Accordingly, Ms. Faki's allegations arising out of her former employment with the Board are not appropriately subject to dismissal simply because they lack procedural precision or completeness in the context of Rule 8 of the Federal Rules of Civil Procedure.

At the same time "if a [*pro se*] plaintiff pleads merely conclusory allegations [about his claims] and the defendant comes forward with affidavits setting out specific facts showing [why he cannot prevail on those claims], plaintiff cannot defeat summary judgment or dismissal for failure to state a claim by merely filing an affidavit that restates the conclusory statements asserted in the complaint." *Perry v.*

*Thompson*, 786 F.2d 1093, 1094 (11th Cir. 1986). Similarly, "[i]f material undisputed

facts show no cause of action or that summary judgment should be granted as a matter

of law, the case can be disposed of[,] [and] [a] plaintiff may not frustrate this process

by merely restating legal conclusions that he has alleged." *Id.* at 1094-95. However,

any "specific facts" pled in a *pro se* plaintiff's sworn complaint or affidavit must be

considered in opposition to summary judgment.[6] *Id.* at 1095.

### D.    Failure of Ms. Faki To Oppose the Board's Motion

Rule 56(e) of the Federal Rules of Civil Procedure provides:

> **Failing to Properly Support or Address a Fact.** If a party fails
> to properly support an assertion of fact or fails to properly address
> another party's assertion of fact as required by Rule 56(c), the court
> may:
>
> > **(1)** give an opportunity to properly support or address the
> > fact;
> >
> > **(2)** consider the fact undisputed for purposes of the motion;
> >
> > **(3)** grant summary judgment if the motion and supporting
> > materials--including the facts considered undisputed--show
> > that the movant is entitled to it; or
> >
> > **(4)** issue any other appropriate order.

FED. R. CIV. P. 56(e). Regardless of these available options in the event of a non-

---

[6] Although Ms. Faki <u>signed</u> her amended complaint (doc. 10 at 7), it is not a <u>verified</u> (sworn) pleading.

movant's failure to oppose, "[t]he movant … continues to shoulder the initial burden of production in demonstrating the absence of any genuine issue of material fact, and the court must satisfy itself that the burden has been satisfactorily discharged." *Reese v. Herbert*, 527 F.3d 1253, 1268 (11th Cir. 2008) (emphasis added).

As this Court has previously stated when the non-movant offers no opposition to a summary judgment motion:

> Thus, although a court may not a grant a motion for summary judgment simply because the motion goes unopposed, it may do so if the moving party has shown that there are no disputed issues of material fact and that it is entitled to judgment as a matter of law. *See, e.g., Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 246 (2d Cir. 2004) ("Although the failure to respond may allow the district court to accept the movant's factual assertions as true . . . , the moving party must still establish that the undisputed facts entitle him to a judgment as a matter of law."); *see also Custer v. Pan American Life Ins. Co.*, 12 F.3d 410, 416 (4th Cir. 1993) ("Thus, the court, in considering a motion for summary judgment, must review the motion, even if unopposed, and determine from what it has before it whether the moving party is entitled to summary judgment as a matter of law."); *see also* FED. R. CIV. P. 56(e).

*Griffin v. U.S. Postal Serv.*, No. 1:06-CV-0124-VEH, (Doc. 29 at 3) (N.D. Ala. Nov. 7, 2008); *see also United States v. One Piece of Real Property*, 363 F.3d 1099 (11th Cir. 2004) ("[T]he district court <u>cannot</u> base the entry of summary judgment on the mere fact that the motion was unopposed, but, rather, must consider the merits of the motion." (emphasis added) (citing *Dunlap v. Transamerica Occidental Life Ins. Co.*,

858 F.2d 629, 632 (11th Cir. 1988) (per curiam))); *One Piece*, 363 F.3d at 1099 ("The

district court need not *sua sponte* review all of the evidentiary materials on file at the

time the motion is granted, but must ensure that the motion itself is supported by

evidentiary materials.") (emphasis added); *Alsina-Ortiz v. Laboy*, 400 F.3d 77, 81 (1st

Cir. 2005) (noting that, faced with a record without any opposing facts from non-

movant, district court has discretion to "accept the moving party's allegedly

uncontested facts as true, but whether or not this justifies summary judgment for the

moving party depends upon the legal and factual configuration that results")

(emphasis added) (*Laboy* cited with approval by Eleventh Circuit in *Reese*, 527 F.3d

at 1269).

## IV.    ANALYSIS

### A.    Ms. Faki Cannot Establish a *Prima Facie* Case of Disability Discrimination.

The Board concedes that Ms. Faki meets the first and second disability prongs.

*See Sutton*, 185 F.3d at 1207 (indicating that a plaintiff must first show she has a

disability and second that she is otherwise qualified for the position). The Board only

challenges Ms. Faki's ability to satisfy the third prong–"that the termination of her

employment was solely because of her disability." (Doc. 47 at 12 n.1). The Board's

contention is well-taken.

As the foregoing set of undisputed facts confirms, no reasonable jury could conclude that the Board ended Ms. Faki's employment <u>solely</u> by reason of her disability. This is because the Board has affirmatively shown (by virtue of Dr. Arribas's undisputed declaration) that reasons–other than Ms. Faki's disability–caused it to decide not to renew Ms. Faki's teaching position.

In particular, Ms. Faki did not make a disability-related report until September 2015 and yet she was receiving unfavorable student evaluations as early as 2011. (*See* Doc. 48-2 at 10 ¶ 34 ("As early as Fall[] 2011[,] Ms. Faik's IDEA Evaluations showed she more often than not performed below her DFLL peers in the CAS at UAB."));[7] (*see also id.* ¶ 37 (explaining that "consistently low teaching performance was one reason" for the adverse employment action)). Also, the Board was experiencing a decline in the demand for Spanish classes–one of the two subject matters that Ms. Faki taught at UAB. (*See id.* at 11 ¶ 38 (indicating that "course offerings needed to change and . . . the DFLL finances needed to improve")); (*see also id.* at 12 ¶ 41 (explaining that "another reason [for] . . . eliminat[ing] Ms. Faki's job" was due to the need "to reduce the number of faculty who taught [Spanish] courses")). With Ms. Faki's unfavorable student evaluations and a need for the Board to reduce the overall number of Spanish classes as admitted factors for the adverse

---

[7] All page references to Doc. 48-2 correspond with the Court's CM/ECF numbering system.

action, Ms. Faki's disability was, at best, only another factor (and certainly not the sole factor) supporting the non-renewal of her appointment. Thus, Ms. Faki's § 794(a) disability claim fails on the causation *prima facie* prong.

### B. Alternatively, Ms. Faki's Disability Discrimination Claim Fails Because She Cannot Demonstrate Pretext Or Otherwise Establish a Triable Claim.

The Board, through Dr. Arribas's testimony, has articulated its legitimate, nondiscriminatory reasons for ending Ms. Faki's appointment as an instructor. These reasons include Ms. Faki's unsatisfactory teaching performance and the change in the needs of the DFLL due to a drop in the demand for Spanish classes. With this burden of production met by the Board, it now becomes Ms. Faki's burden to show pretext.

A plaintiff can substantiate pretext by "demonstrat[ing] such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." *Jackson v. State of Ala. State Tenure Comm'n*, 405 F.3d 1276, 1289 (11th Cir. 2005) (quoting *Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir. 1997) (internal quotation marks omitted) (quoting in turn *Sheridan v. E.I. DuPont de Nemours & Co.*, 100 F.3d 1061, 1072 (3d Cir. 1996)). Oftentimes, a plaintiff will point to an employer's more favorable treatment of a comparator witness (falling outside of that plaintiff's protected legal status) as an example of a

triable inconsistency. *Cf. Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997) ("To make a comparison of the plaintiff's treatment to that of non-minority [or, as in this case, non-disabled] employees, the plaintiff must show that [s]he and the employees are similarly situated in all relevant respects." (citing *Smith v. Stratus Computer, Inc.*, 40 F.3d 11, 17 (1st Cir. 1994))).

Another way to show pretext is through circumstantial evidence that a discriminatory animus tainted the decision-making process. *Cf., e.g., Vessels v. Atlanta Indep. Sch. Sys.*, 408 F.3d 763, 770 (11th Cir. 2005) ("Vessels' evidence of pretext includes statements he claims that AISS officials made regarding the desirability of having black employees in a school system serving a predominantly black population."); *id.* ("Even where such evidence of race [or disability-based] bias proves insufficient to prove an employee's case through direct evidence, it can be relevant in the circumstantial framework to show that the employer's proffered reasons were pretextual."); *cf. also Ross v. Rhodes Furniture, Inc.*, 146 F.3d 1286, 1292 (11th Cir. 1998) ("Because Ross's case turned on circumstantial evidence, the proper inquiry is whether Sweeney's 'Tarzan' remark and Kirkland's remark, when read in conjunction with the entire record, are circumstantial evidence of those decisionmakers' discriminatory attitude."); *id.* ("If so, the court must then determine whether such circumstantial evidence, along with other evidence (including Ross's

*prima facie* case), might lead a reasonable jury to disbelieve Rhodes's proffered reason for firing Ross.").

Additionally, proof satisfying the pretext model is not the exclusive way a plaintiff can prevail at the summary judgment stage. *See Smith* v. *Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011) ("[E]stablishing the elements of the *McDonnell Douglas* framework is not, and never was intended to be, the *sine qua non* for a plaintiff to survive a summary judgment motion in an employment discrimination case."). As the Eleventh Circuit has explained "[a] triable issue of fact exists if the record, viewed in a light most favorable to the plaintiff, presents 'a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination <u>by the decisionmaker</u>.'" *See id.* (footnote omitted) (emphasis added) (quoting *Silverman v. Bd. of Educ.*, 637 F.3d 729, 734 (7th Cir. 2011), *overruled by Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760, 765 (7th Cir. 2016) ("Today we reiterate that 'convincing mosaic' is not a legal test. . . . The legal standard . . . is simply whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action.")).[8]

---

[8] In *Smith*, the Eleventh Circuit reversed the district court's order granting summary judgment even though the panel confirmed that the plaintiff's comparator evidence was lacking. 644 F.3d at 1327 ("In his brief to this court, he repeats the argument he presented to the district

Here, neither Ms. Faki's deposition testimony (doc. 48-1 at 2-21)[9] nor her answers to interrogatories (doc. 48-32 at 2-17)[10] provide any evidence of pretext, much less, a triable amount. Further, the record otherwise lacks sufficient disability-driven proof for a reasonable jury to infer the existence of disability discrimination under *Smith*'s convincing-mosaic model. Thus, Ms. Faki's § 794(a) disability claim fails for this additional reason.

### C.     Ms. Faki's Disability-Based Retaliation Claim Similarly Does Not Survive Summary Judgment.

The Board's Motion does not expressly address Ms. Faki's allegation that she suffered retaliation for complaining about "discriminatory conduct regarding disability[.]" (Doc. 10 at 5 ¶ 17). While it is not entirely clear from Ms. Faki's amended complaint that she intended to raise retaliation as a separate claim, the Court is obligated to read her pleadings liberally because she is a *pro se* litigant.

Undoubtedly, the Rehabilitation Act prohibits retaliation by an employer. *See*

---

court—that he does not need a black supervisor comparator because the record contains sufficient circumstantial evidence to create a triable issue of fact as to whether Lockheed fired him because he is white."); *see id.* ("We agree and find that the district court erred in granting Lockheed summary judgment."); *see also id.* 1328 ("Here, Mitten did not need to rely on the *McDonnell Douglas* presumption to establish a case for the jury."); *see also id.* ("As the following discussion explains, the record contained sufficient evidence to allow a jury to infer that Lockheed fired Mitten because he is white.").

[9]  All page references to Doc. 48-1 correspond with the Court's CM/ECF numbering system.

[10]  All page references to Doc. 48-32 correspond with the Court's CM/ECF numbering system.

*Shotz v. City of Plantation*, 344 F.3d 1161, 1174 n.20 (11th Cir. 2003) (recognizing the Rehabilitation Act's express incorporation (29 U.S.C. § 794(d)) of the ADA's anti-retaliation provision (42 U.S.C. § 12203(a)) (citing *Hiler v. Brown*, 177 F.3d 542, 545 (6th Cir. 1999))); *see also Hiler*, 177 F.3d at 545 ("The Rehabilitation Act of 1973 prohibits discrimination and retaliation in employment against disabled persons by federal agencies."). Nonetheless, to the extent that Ms. Faki has asserted and is able to prima facially support a retaliation claim under the Rehabilitation Act, it likewise fails to survive summary judgment.

As explained above, the record is without sufficient evidence of inconsistencies, contradictions, or similarly-situated comparator witnesses to undermine the Board's lawful reasons for ending Ms. Faki's employment. The record also does not reveal a a retaliatory animus on the part of Dr. Arribas, Dean Palazzo, or any other Board employees who were involved in the decision to not to renew Ms. Faki's appointment as an instructor. Finally, the Court does not otherwise see a convincing pattern of circumstantial proof establishing a triable issue of retaliation. Thus, no reasonable jury could return a verdict in favor of Ms. Faki on her retaliation claim.

### D. The Board's Request That Unspecified Costs Be Taxed Against Ms. Faki Is Denied Without Prejudice.

Although the Board seeks an award of costs against Ms. Faki in its Motion, it has failed to develop that request with <u>any</u> argument, legal authority, or an itemization of those costs. Moreover, the customary practice for awarding costs in this Court is for the prevailing party to file a bill of costs after the entry of judgment in its favor. The Clerk then reviews that bill–pursuant to the list of allowable items under 28 U.S.C. § 1920–and determines the appropriate amount to award as costs. *See* FED. R. CIV. P. 54(d) ("The clerk may tax costs on 14 days' notice."). The Court is seldom (if ever) involved in this process unless some type of dispute arises post-bill of costs. *Cf.* FED. R. CIV. P. 54(d) ("On motion served within the next 7 days, the court may review the clerk's action."). Thus, that portion of the Board's Motion is due to denied without prejudice to its right to seek costs in a manner consistent with the Court's usual procedures.

## V.     CONCLUSION

Thus, the Board's Supplemental Motion is due to be termed as moot and its Motion is due to be granted in part and otherwise denied without prejudice. Further, in the absence of any claims remaining, the Court will enter a separate final judgment order that dismisses Ms. Faki's lawsuit with prejudice.

**DONE** this the 9th day of November, 2017.

VIRGINIA EMERSON HOPKINS
United States District Judge